Linda K. VERDECCHIA, Plaintiff,

v.

DOUGLAS A. PROZAN, INC., d/b/a The Prudential Prozan/Moore Realtors, and/or Prudential Prozan Realty, and Douglas Prozan, individually and as employer, Defendants.

Civil No. 99–279 Erie.

United States District Court, W.D. Pennsylvania.

July 30, 2003.

John R. Orie, Jr., Orie & Zivic, Pittsburgh, PA, for plaintiff.

Matthew W. McCullough, MacDonald, Illig, Jones & Britton, Erie, PA, for defendants.

## OPINION

COHILL, Senior District Judge.

Plaintiff Linda K. Verdecchia commenced this four-count civil rights employment discrimination action based on age and disability under the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 *et seq.*), the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA") (43 Pa.C.S.A. § 951 *et seq.*).

Presently before the court for disposition is the Motion for Summary Judgment

(Doc. 23) filed by all the above-named defendants. Defendants have also filed a brief in support of their motion, and plaintiff Linda K. Verdecchia, has filed a brief in opposition, to which Defendants filed a reply brief. For the reasons that follow, we will grant Defendants' motion as to Plaintiff's federal claims, and decline to exercise our supplemental jurisdiction over her state law claims.

## I. Background

Plaintiff Linda Verdecchia began working as a bookkeeper for Douglas A. Prozan, Inc. on May 31, 1988. (Complaint, ¶ 7.) She brings this lawsuit as a result of the events that occurred after she was diagnosed with kidney disease in March 1995. (Complaint, ¶ 9.) She sues Defendants for age and disability discrimination claiming the following unlawful conduct:

(1) demoting her for approximately a three month time period from October 2, 1995 through January 1996;

(2) disparate treatment in failing to pay her while she was on leave recovering from surgery from March 8, 1996 through July 8, 1996; and

(3) terminating her employment on July 8, 1996.

In order to better understand the sequence of events, it is helpful to know a few key differences in each parties' statement of the issues. Ms. Verdecchia claims she was demoted, but Mr. Prozan assert that it was a temporary reduction of hours due to business reasons. Ms. Verdecchia claims she was promised to be paid while recovering and that others were paid when they took time off, but Mr. Prozan argues that he tried to help Ms. Verdecchia out while she was recovering but told her the company could not afford to pay her when she was not working. Ms. Verdecchia contends that she was fired on the day she returned to work on July 8, 1996, but Mr. Prozan says that her return to work was a complete surprise, that he was unprepared for her to start that day, and that he never terminated her.

On March 30, 1995, Ms. Verdecchia informed her superior, Douglas A. Prozan, that she had kidney disease, and that this condition would not limit or restrict her ability to perform her job. (Complaint, ¶ 10.) She underwent treatment for her kidney disease, which include taking steroid medication. (Complaint, ¶¶ 11, 12.) During this time, Ms. Verdecchia continued to perform her full-time job as usual. (Complaint, ¶ 12.)

On September 29, 1995, Mr. Prozan told her that he had to temporarily reduce her hours to part-time status for reasons relating to restructuring of the organization. (Complaint, ¶ 12; Answer ¶ 12.) She began working part-time hours on October 2, 1995. (Complaint, ¶ 12; Answer ¶ 12.)

Ms. Verdecchia alleges that she was demoted because of a perception that her job performance was affected adversely due to her medication. (Complaint, ¶ 12.) Mr. Prozan denies that it was a demotion and denies that the temporary reduction in her hours was due to her job performance or her medical condition. (Answer ¶ 12.) Mr. Prozan maintains that the temporary part-time status was due to economic and business factors and was in lieu of a lay off. (Answer, ¶ 12.) Ms. Verdecchia resumed her full-time status in January 1996.

As a result of the steroids she was taking, Ms. Verdecchia developed steroid induced osteoporosis, which led to avascular necrosis femur and degenerative hip joints. (Complaint, ¶ 14.) She eventually learned that she would have to undergo hip replacement surgery for this condition. (Complaint, ¶ 15.)

In late December 1995, or early January 1996, shortly after learning that she would

need hip replacement surgery, Ms. Verdecchia told Mr. Prozan that the surgery was scheduled for March 8, 1996, and that she would need to take a leave of absence while she was recovering. (Complaint, ¶¶ 15–16.) Plaintiff claims that she never told Mr. Prozan how long she would need to recover, while Mr. Prozan states that she told him recovery time was estimated to be 6 to 8 weeks.

Initially, Mr. Prozan told her that he would continue to compensate her while she was recovering and that her job would not be in jeopardy. (Complaint, ¶ 17.) However, on February 12, 1996, Mr. Prozan told Ms. Verdecchia that the company was not in a financial position to pay her while she was recuperating. (Deposition of Linda Verdecchia, at 154.) As an alternative, he thought he could lay off Ms. Verdecchia and she then would be able to collect unemployment compensation. (Verdecchia Deposition, at 154.) However, unknown to the parties at the time, a person is prohibited from collecting unemployment compensation for a lay off to recover from surgery. (Verdecchia Deposition, at 155.)

Ms. Verdecchia underwent hip surgery on March 8, 1996. Two days after the surgery, Mr. Prozan called her in the hospital to see how she was doing. (Verdecchia Deposition, at 170.)

On March 27, 1996, Ms. Verdecchia telephoned the Pennsylvania Human Relations Commission ("PHRC") to inquire about filing a complaint. (Verdecchia Deposition, at 172; Linda Verdecchia's Diary, at 24, attached as Ex. 6 to Plaintiff's Appendix.) She completed and mailed PHRC forms, which would later become the short form complaint filed April 1, 1996, alleging disability discrimination for demotion and failure to pay while on leave. (Verdecchia Deposition, at 172–173; Verdecchia Diary, at 25; Short Form Complaint, Ex. N, at-

tached to Supplemental Affidavit of Matthew McCullough, Doc. 37.)

On April 19, 1996, Mr. Prozan visited Ms. Verdecchia at her home. (Verdecchia Deposition, at 174–175.) At that time he gave her a personal check for $500, and mentioned that he was not sure if it was an advance or arrears. (Verdecchia Deposition, at 176.) He also asked when Ms. Verdecchia thought she would be back to work. (Verdecchia Deposition, at 175.) Ms. Verdecchia said that she thought it might be three months, but that she had not talked to the doctor and she did not know when she would be permitted to return. (Verdecchia Deposition, at 176–178, 180; Complaint, ¶ 20; Diary, at 26.).

Mr. Prozan also asked Ms. Verdecchia if she might want to do computer work from home. (Verdecchia Deposition, at 165–166; Diary at 26.) Ms. Verdecchia testified that she nodded her head in agreement to this suggestion, but that Mr. Prozan never brought a computer or otherwise followed through on this suggestion. (Verdecchia Deposition, at 166).

On June 3, 1996, Ms. Verdecchia's doctor told her to stay off work another four weeks, and he scheduled a follow-up appointment for July 1, 1996. (Complaint, at 23; Verdecchia Deposition at 184; Diary at 27.) On June 5, 1996, Ms. Verdecchia telephoned the office to inform Mr. Prozan that her doctor said it would be another four weeks before she could return to work. (Verdecchia Deposition, at 184–186.) Mr. Prozan was in a meeting, so Ms. Verdecchia spoke with Pat Sullivan who was to relay the message to Mr. Prozan, but he did not call Ms. Verdecchia back. (Verdecchia Deposition, at 185–186; Diary at 27.)

At her July 1, 1996 doctor appointment, Ms. Verdecchia's doctor released her to return to work on July 8, 1996, limiting her to a four-hour workday to start. (Com-

plaint, ¶ 22; Verdecchia Deposition at 188–189; Diary at 28.) That same day she also signed her formal PHRC complaint against her employer complaining about her demotion and sent it to the Commission. (Verdecchia Deposition at 201; Diary at 28.)

On July 8, 1996, Ms. Verdecchia returned to the office. (Complaint, at 24; Verdecchia Deposition, at 188.) According to Mr. Prozan, her return to work was a complete surprise as he had no notice that she was returning. (Deposition of Douglas A. Prozan, at 147–148.) According to Ms. Verdecchia, she believes she had telephoned the office on July 1, 1996 and spoke with Pat Sullivan and told her that she would be coming back to work the next week. (Verdecchia Deposition, at 189–190, 194–195.)

In any event, Mr. Prozan told Ms. Verdecchia that he was not prepared for her return to work and did not have a seat for her. (Verdecchia Deposition, at 209–210; Prozan Deposition, at 148.) He further stated that he also wanted to talk to his partner about her return. (Verdecchia Deposition, at 209–210.) Ms. Verdecchia believed she was refused admittance to work, left the office and that same day filed for unemployment compensation. (Verdecchia Deposition, at 213, 214.)

After exchanging telephone messages over the next few days, Ms. Verdecchia and Mr. Prozan spoke by telephone on July 10, 1996, and agreed to a meeting on July 16, 1996. (Verdecchia Deposition, at 215–217, 219–220.)

On July 14, 1996, Ms. Verdecchia completed a PHRC IN–17 Form complaining that she was discharged based on age and disability discrimination. (Verdecchia Deposition, at 201–202; Verdecchia Dep. Ex. 3, attached to Defendants' Appendix as Ex. D). This ultimately formed the basis for her second PHRC complaint, which was filed on February 19, 1997. (Ex. J. to

Affidavit of Matthew McCullough, attached as Ex. H to Defendants' Appendix.)

At no time did Ms. Verdecchia inform Mr. Prozan that she believed she was fired, that she had applied for unemployment compensation, that she filed one PHRC complaint, and had begun the process of filing a second PHRC complaint. (Verdecchia Deposition, at 221, 237.) On July 16, 1996, Mr. Prozan, Ms. Verdecchia and her husband met at the Prozan office.

The parties agree that the July 16, 1996 meeting was heated, ending with Mr. Prozan suggesting that Ms. Verdecchia could return to work if she could put everything behind her and be loyal to him. (Verdecchia Deposition, at 227–228, 231; P. Deposition, at 157–159; Verdecchia Dep. Ex. 6, Typewritten Notes of L. Verdecchia, attached to Defendants' Appendix as Ex. D.) Ms. Verdecchia was to think about what she wanted to do and then telephone Mr. Prozan with her decision. (Verdecchia Deposition, at 227–228, 231; P. Deposition, at 157–159; Verdecchia Dep. Ex. 6, Typewritten Notes of L. Verdecchia, attached to Defendants' Appendix as Ex. D.)

On July 19, 1996, Ms. Verdecchia telephoned Mr. Prozan to tell him she wanted to visit her daughter in Pittsburgh over the weekend and would make her decision when she returned on the following Monday. (Prozan Deposition, at 152; Verdecchia Deposition, at 234–235.)

On July 22, 1996, she telephoned Mr. Prozan and told him that she was prepared to come back to work, however, she said she could not put the past behind her. (Prozan Deposition, at 153, 165; Verdecchia Deposition, at 236–237, Diary, at 35.) During that telephone call, Mr. Prozan mentioned that he had received notice that Ms. Verdecchia had applied for unemployment compensation and felt that he needed to talk to his partner before making any

decision about Ms. Verdecchia's return to work. (Prozan Deposition, at 237–238.)

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c), *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment may be granted only if the moving party establishes that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* Summary judgment is appropriate only when the record evidence could not lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In evaluating a motion for summary judgment the court does not weigh the evidence or make credibility determinations. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Rather than evaluating the evidence and determining the truth of the matter, the court determines whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In reviewing the evidence, the court draws all reasonable inferences in favor of the non-moving party. *Reeves*, 120 S.Ct. at 2110; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "That is, the court shall give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves*, 120 S.Ct. at 2110 (quotations and citation omitted).

## III. Discussion

The Americans with Disabilities Act provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedure, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Under the ADEA, "[i]t shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Plaintiff presents her claim in four Counts: Count I alleges unlawful discharge, demotion and disparate treatment in violation of the ADA; Count II alleges unlawful discharge and disparate treatment in violation of the ADEA[1]; Count III alleges unlawful discharge, demotion and disparate treatment in violation of the PHRA's proscription of discrimination based on disability; Count IV alleges unlawful discharge and disparate treatment in violation of the PHRA's proscription of discrimination based on age. Defendants present numerous arguments in favor of summary judgment on Plaintiff's claims as set forth below.

First, Defendants argue that Counts I and II should be dismissed because Defendants are not "employers" as defined by

---

1. As explained in our discussion, Plaintiff concedes that she is only pursuing her ADEA claim and her age discrimination claim under the PHRA with regard to unlawful discharge and disparate treatment.

the ADA and ADEA. Second, Mr. Prozan asserts that summary judgment is appropriate with respect to Counts I and II because he was not Plaintiff's employer and neither the ADA nor the ADEA provide for individual liability.

Third, Defendants argue that Plaintiff has failed to exhaust her administrative remedies with respect to her claims of unlawful demotion and disparate treatment asserted in all four Counts. Fourth, they argue that her claim of unlawful demotion in violation of the ADA (Count I) and PHRA (Count III) are barred by the applicable limitations period.

Fifth, Defendants submit that summary judgment as a matter of law is appropriate with respect to Counts I and III because Ms. Verdecchia was not disabled within the meaning of the ADA. Sixth, Defendants argue that Plaintiff has failed to make out a *prima facie* case of age or disability discrimination with respect to her claim that she was disparately treated by Defendants because they did not give her paid leave while she was recovering from surgery. They also argue that she has failed to refute Defendants' legitimate nondiscriminatory reason for the alleged disparate treatment and for her temporary demotion.

Finally, Defendants argue that Plaintiff has failed to make out a *prima facie* case of age or disability discrimination with respect to her claim of unlawful discharge. In addition, Defendants argue that she has failed to refute Defendants' legitimate nondiscriminatory reason for the alleged discharge.

### A. Defendants' Argument that they are not Employers under Federal Law

Defendants Douglas A. Prozan, Inc. and Douglas Prozan move for summary judgment claiming that they are each entitled to judgment as a matter of law with respect to Ms. Verdecchia's federal claims asserted in Counts I and II because she cannot establish that either defendant is an "employer" within the meaning of the ADA or the ADEA.

### 1. Douglas A. Prozan, Inc.

The ADA and the ADEA prohibit employers from discriminating against qualified individuals on the basis of disability or age. 42 U.S.C. § 12112(a); 29 U.S.C. § 623(a)(1). The ADA defines "employer" as

a person engaged in an industry affecting commerce who has 15 or more employees for each work day in each of 20 or more calendar weeks in the current or preceding calendar years, and any agent of such person....

42 U.S.C. § 12111(5)(A). The ADEA defines an "employer" as

a person engaged in industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year....

29 U.S.C. § 630(b).

Defendants submit that the record evidence establishes that during the relevant time period Douglas A. Prozan, Inc. employed less than 15 employees. Specifically, Douglas A. Prozan, Inc. claims that it employed a maximum of 10 employees during all or part of 1994; 11 employees during all or part of 1995; and 10 employees during all or part of 1996. (Affidavit of Douglas A. Prozan, paragraphs 4–12, and Ex. A–F, attached to Affidavit). Each of the employees are identified in Mr. Prozan's affidavit and in the exhibits to the affidavit. Exhibits A, B, and C are copies of Pennsylvania tax forms PA UC–2, "Employer's Report for Unemployment Compensation," for the years 1994, 1995, and 1996. Exhibits D, E, and F, are copies of Federal tax forms W–3, "Transmittal of

Wage and Tax Statements," for the years 1994, 1995, and 1996. Form W–3 requires that the employer also submit a form W–2 for each individual employee, and the relevant W–2 for each year are also included as part of Defendant's exhibits D, E, and F.

Plaintiff responds by submitting her own affidavit claiming that at all relevant times her employer employed 22 persons, all of whom she identifies by name. (Affidavit of Linda K. Verdecchia, Ex. 7 to Appendix of Exhibits to Plaintiff's Response). While ten of the individuals named by Ms. Verdecchia are identical to those identified by Mr. Prozan, twelve of the named individuals on Ms. Verdecchia's list were not identified by Mr. Prozan in his affidavit and exhibits.

■ In its Reply Brief, Defendants argue that Ms. Verdecchia's affidavit fails as a matter of law because it does not indicate when each of the alleged employees worked. They also disagree with Ms. Verdecchia's claim as a factual matter that her employer actually employed 22 employees. In the accompanying Supplemental Affidavit by Douglas A. Prozan and in their reply brief, Defendants assert that twelve of the alleged employees identified in Verdecchia's affidavit were not employees, but rather were real estate agents who functioned as independent contractors.

We disagree with Defendants' first argument that Ms. Verdecchia's affidavit is insufficient to preclude summary judgment because it fails to allege facts that demonstrate the actual number of weeks the individuals were employed during the relevant years. On a motion for summary judgment it is the moving party who has the burden of establishing that there exists no genuine issue of material fact. In addition, we draw all reasonable inferences in favor of the non-moving party. Here, Verdecchia has submitted an affidavit identifying 22 individuals that she asserts were employed by her employer at all relevant times. If each of these individuals was in fact an employee, we conclude that this information is sufficient to raise a genuine issue of material fact.

However, we agree with Defendants' argument that the twelve real estate agents not identified as employees in Mr. Prozan's affidavit are independent contractors who do not qualify as employees for purposes of the ADA and ADEA.

### a. Whether the Real Estate Agents are Employees or Independent Contractors

Whether a defendant-employer has 15 (for an ADA claim) or 20 (for an ADEA claim) or more employees is a jurisdictional requirement for plaintiff's federal employment discrimination claims. Thus, we must determine if the twelve disputed real estate agents identified by Ms. Verdecchia are independent contractors rather than employees for purposes of determining the jurisdictional requirement.

■ Both the ADA and the ADEA offer circular definitions of the term "employee," defining it as an individual employed by an employer. (*See* 42 U.S.C. § 12111(4) and 29 U.S.C. § 630(b)). "The law is now clear that where the statute does not helpfully define the term 'employee,' courts are to use a common-law agency test to determine employee status." *Jean Anderson Hierarchy of Agents v. Allstate Life*, 2 F.Supp.2d 688, 693 (E.D.Pa.1998), citing *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). *See also Walker v. Correctional Medical Systems*, 886 F.Supp. 515, 520 (W.D.Pa.1995) (concluding that *Darden* requires application of the common-law agency test in determining employee status under Title VII). "Under this test, all of the incidents of the relationship must be assessed and weighed

with no one factor being decisive;...." *Jean Anderson Hierarchy,* 2 F.Supp.2d at 693.

■ The common-law test for distinguishing between an employee and an independent contractor was described in *Darden* as follows:

"In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Darden,* 503 U.S. at ——–——[322–26], 112 S.Ct. at 1348–49 (quoting [*Community for Creative Non–Violence v.*] *Reid,* 490 U.S. [730] at 751–52, 109 S.Ct. [2166] at 2178–79[, 104 L.Ed.2d 811 (1989)] (footnotes omitted)).

*Kellam v. Snelling Personnel Servs.,* 866 F.Supp. 812, 814–815 (D.Del.1994), *affirmed,* 65 F.3d 162 (3d Cir.1995). Among "the *Darden* factors, the greatest emphasis is placed on the hiring party's right to control the manner and means by which the work is accomplished." *Walker v.Correctional Medical Systems,* 886 F.Supp. 515, 521 (W.D.Pa.1995) (citing *Kellam,* 866 F.Supp. at 815).

■ In support of the contention that the real estate agents are not employees but are independent contractors, Defendants have provided a copy of the representative Broker–Salesperson Contract used during the relevant time period by Douglas A. Prozan, Inc. and real estate salespersons. (Ex. G to Supplemental Affidavit of Prozan). The agreement explicitly provides that each salesperson "shall function as an independent contractor and not as an employee of Broker for any purpose including federal, state and local tax purposes." (Ex. G, at ¶ 2.A.) The agreement further states that the salesperson "shall render real estate services without being subject to the control of Broker," and is "liable for the payment of all ... Payroll taxes applicable to any portion of real estate commissions...." (Ex. G, at ¶ 2.A.)

According to the agreement, a real estate agent is responsible for his own disability insurance, public liability and property damage insurance, and errors and omission insurance. (Ex. G, at ¶ 2.B.) He or see must provide his or her own automobile and pay for its expenses. (Ex. G, at ¶ 2.B.) The agreement also states that each salesperson "shall be liable for any expense, cost or liability incurred by the Salesperson." (Ex. G, at ¶ 2.B.)

An agent is also not included in any workers' compensation insurance program offered by the Broker. (Ex. G, at ¶ 2.B.) Earned commissions are due and payable to the agent when the Broker collects the commission. (Ex. G., at ¶ 5.A.) Either party can terminate the agreement by giving a one day written notice. (Ex. G., at ¶ 6.A.)

In support of a finding that the real estate agents are independent contractors in practice, Defendants assert that Douglas A. Prozan, Inc. exercises little control over the agents. The agents are permitted to schedule work as they choose and do not have to account for their time.

(Supplemental Affidavit of Prozan, at ¶ 6a.) There is no formal evaluation of agents. (Supplemental Affidavit of Prozan, at ¶ 6a.) Advertising is done through Douglas A. Prozan, Inc. as broker and pursuant to state regulations, however, the agent is responsible for ensuring that listed properties are actually advertised and the agent must pay for special advertising, certain individual marketing expenses, and for distribution of marketing materials. (Supplemental Affidavit of Prozan, at ¶¶ 6b & 6h.) Douglas A. Prozan, Inc. provides agents with a desk and office supplies but there is no expense account or allowance. (Supplemental Affidavit of Prozan, at ¶ 6c.) There is no requirement that an agent participate in "floor time" at the office answering telephone calls and attending to walk-in customers. (Supplemental Affidavit of Prozan, at ¶ 6e.) However, if an agent does want to participate in "floor time," the agent can volunteer to do so by signing up for a scheduled four-hour block of time to be in the office. (Supplemental Affidavit of Prozan, at ¶ 6e.) Douglas A. Prozan, Inc. has no control over an agent's work schedule, however, agents are expected to establish their own leads and customer base, as well as maintain customer relations. (Supplemental Affidavit of Prozan, at ¶¶ 6i & 6k.) Each agent pays his or her prorated share of a master errors and omission insurance policy carried by the company. (Supplemental Affidavit of Prozan, at ¶ 6f.) Agents also pay their own premiums on the company's hospitalization plan. (Supplemental Affidavit of Prozan, at ¶ 6m.) Real estate agents are responsible for paying their own license fees and for ensuring compliance with applicable state requirements. (Supplemental Affidavit of Prozan, at ¶ 6g.) Agents are paid by the Broker in accordance with state regulations on a commission basis after a commission is earned. (Supplemental Affidavit of Prozan, at ¶¶ 6l & 6n.)

All real estate agents pay their own taxes in accordance with the agreement, and in fact no taxes are withheld from commission paid to the agents by the Broker. (Supplemental Affidavit of Prozan, at ¶¶ 6n & 8 and Exs. H, I, & J.) Attached as exhibits to Mr. Prozan's supplemental affidavit are copies of IRS Form 1096, "Annual Summary and Transmittal of U.S. Returns," and the accompanying Form 1099–MISC's for each relevant year. (Supplemental Affidavit of Prozan, at ¶ 8, Exs. H (1994), I (1995), & J (1996).) These documents show the amount of nonemployee compensation distributed to each person who received a Form 1099–MISC from Douglas A. Prozan, Inc., including the 12 real estate agents alleged to be employees by Ms. Verdecchia. The 1099–MISC forms demonstrate that no taxes were paid on the compensation of the 12 real estate agents. (Supplemental Affidavit of Prozan, at ¶ 9 and Ex. K.)

Plaintiff offers no rebuttal to Defendant's record evidence and factual averments of the nature of the relationship between Douglas A. Prozan, Inc. and its real estate agents.

The instant case is similar to that in *Stetka v. Hunt Real Estate Corp.*, 859 F.Supp. 661 (W.D.N.Y.1994). In *Stetka,* the Court had to determine whether a real estate agent was an employee of a real estate company and thereby entitled to bring an action for sex discrimination under Title VII and the New York State Human Rights Law, or whether she was an independent contractor who could not. Applying the common law agency test, the *Stetka* court found that the agent was an independent contractor. *Id.* at 667. In *Stetka,* the court found that the agent's time was "generally unstructured," and that she was not an employee "[d]espite the fact that [the agent] was given office space, that she was scheduled for floor

time by the [Company's] manager, and the requirement that Plaintiff attend sales meetings and spend two to four hours a week in the [company's] office, . . . ." *Id.* at 667. *See also Breen v. Hunt Real Estate Corp.*, 1994 WL 417017 (W.D.N.Y. July 29, 1994) and *Krijn v. Pogue Simone Real Estate Co.*, 752 F.Supp. 102 (S.D.N.Y. 1990).

The record evidence shows that the agents here worked their own hours, were not required to be present in the office, had only voluntary floor time in the office, were on a strict commission basis, were given no draws or advances on future commissions, and paid their own insurance, special advertising, and license requirement fees. We find that the real estate agents identified by Plaintiff as employees of Defendant are independent contractors and not "employees" for purposes of determining the requisite number of employees to make a defendant covered under the ADA and ADEA. Thus, there is no genuine issue of material fact that Douglas A. Prozan, Inc. employed fewer that 15 employees during the years 1994, 1995, and 1996. Therefore, Douglas A. Prozan, Inc. is not an employer within the meaning of the ADA and the ADEA and accordingly, summary judgment on Plaintiff's claims asserted under the ADA and ADEA is appropriate.

### 2. Douglas Prozan as an Individual

Plaintiff argues that the individual defendant, Douglas Prozan, was the owner of the company that employed Plaintiff. She characterizes Mr. Prozan's role as "doing business as" the company that employed her and thus argues that he should be considered as her employer. This argument does not establish that Mr. Prozan was Plaintiff's employer. To the contrary, the record evidence demonstrates that Ms. Verdecchia was not employed by Mr. Prozan, but was employed by Douglas A. Pro-

zan, Inc. Even if Mr. Prozan was Plaintiff's employer, our analysis of Douglas A. Prozan, Inc. would apply equally to him and he would not be considered an "employer" within the meaning of the ADA and ADEA.

■ Individual liability under the ADA and ADEA is not available. While the Court of Appeals for the Third Circuit has not addressed this precise question, it has held that individuals cannot be sued under Title VII. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996). The ADA and ADEA define eligible defendants identically to, and is interpreted consistently with, Title VII. *Diep v. Southwark Metal Mfg. Co.*, CA 00–6136, 2001 WL 283146, *2, 2001 U.S. Dist. LEXIS 2953,*5–*6 (E.D. Pa. Mar 19, 2001), *citing Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir.1995) ("The ADA, ADEA, and Title VII all . . . prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well."). The ADA and ADEA claims are therefore dismissed insofar as they pertain to any action alleged to have been taken by Mr. Prozan.

Because we will dismiss the federal claims against Defendants, we must decide whether to exercise supplemental jurisdiction over Plaintiff's state law claims. A court "may decline to exercise supplemental jurisdiction [over state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). We decline to exercise supplemental jurisdiction over Plaintiff's state law claims, particularly because we conclude that there is no merit to Plaintiff's claims.

## B. Defendants' Procedural Arguments

Defendants also sought partial summary judgment on Plaintiff's claims of discrimination that are based on her allegations that she was unlawfully demoted and suffered disparate treatment by being denied paid leave. Defendants argue that Plaintiff has failed to exhaust her administrative remedies or failed to comply with the limitations period with respect to her claims of unlawful demotion and disparate treatment asserted in Counts I, II, III, and IV.

### 1. Failure to Exhaust Administrative Remedies on Age Discrimination Claims

Plaintiff filed two complaints with the PHRC, both of which were cross-filed with the EEOC. In Plaintiff's first complaint, filed with the PHRC on August 12, 1996, she claimed discrimination based on her disability; she did not claim age discrimination. In that complaint, she alleged two discriminatory acts: (1) the demotion from full to part-time status, and (2) the denial of paid leave.

In her second complaint, filed with the PHRC on February 19, 1997, she claimed both age and disability discrimination, but Ms. Verdecchia only complained of the discrimination as it related to one discriminatory act: her alleged discharge on July 8, 1996.

■ Defendants argue that Plaintiff has failed to exhaust her administrative remedies with respect to age discrimination claims based on her demotion and denial of paid leave since she did not claim age discrimination in the first PHRC complaint where she asserted these claims.

Plaintiff explains that she is only seeking damages for her demotion as the result of disability discrimination, thus conceding that she does not assert an age discrimination claim for her demotion. Thus, partial summary judgment is appropriate to the extent Defendants seek summary judgment on Plaintiff's claims of age discrimination in demoting her.

Ms. Verdecchia, however, maintains that her age discrimination claims based on the alleged disparate treatment of denying her paid leave on March 8, 1996, while offering paid leave to others still survives. She claims that this discriminatory act was ongoing up to her termination on July 8, 1996, and is therefore timely.

However, Plaintiff fails to explain how she can maintain an age discrimination claim for disparate treatment when her first-filed complaint, which alleged disparate treatment, is not based on age discrimination; and her second-filed complaint, which asserts discrimination based on age, does not allege disparate treatment. As Defendants put it, this is "not a question of whether she timely pursued her administrative remedies regarding these particular age discrimination claims [demotion and failure to pay while on leave] but whether she asserted them at all." *Defendant's Reply Brief,* at 16. We agree. A review of the complaints filed with the PHRA and cross-filed with the EEOC show that she did not assert claims of age discrimination based on unlawful demotion and disparate treatment in her complaints filed with the PHRA and EEOC.

■ We must also reject Ms. Verdecchia's suggestion that the failure to pay her while she was on leave was an ongoing continuous act of discrimination. The Supreme Court recently explained that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002). The Supreme Court offered as examples of discrete discriminatory acts "termination, failure to promote, denial of transfer, or

refusal to hire." *Id.* at 2073. We find that the failure to pay a plaintiff while on leave is a discrete discriminatory act and not an ongoing violation.

### 2. Disability Discrimination Based upon Demotion

Next, Defendants argue that Ms. Verdecchia's claims that her employer discriminated against her based on her disability by unlawfully demoting her are barred by the limitations periods of the ADA and PHRA.

Defendants claim that she did not file her complaint within 180 days under the PHRA or 300 days under the EEOC. She filed her complaint on August 12, 1996, thus the complaint is timely with respect to discriminatory acts occurring 300 days prior to August 12, 1996, or October 16, 1995. The alleged discriminatory act of demotion took place on September 29, 1995, when Mr. Prozan told Ms. Verdecchia that her hours were being reduced beginning October 2, 1995. Thus, Defendants argue that her claim of disability discrimination based on the demotion is time-barred. 42 U.S.C. § 2000e–5(e), 43 P.C.S.A. 959(h).

Ms. Verdecchia disagrees and in response refers to PHRC documents that she claims demonstrate that the PHRC did not determine that her complaint was untimely as to her demotion. (*Plaintiff's Response,* at 11–12 (citing Appendix of Exhibits, Exs. 8–10).)

Ms. Verdecchia filed a short form complaint with the PHRC on April 1, 1996, wherein she alleged a discriminatory act occurring on October 2, 1995. (Ex. N, attached to Supplemental Affidavit of McCullough, Doc. 37.) The case was docketed on August 12, 1996, and the amended complaint was served on Defendant on August 23, 1996. The Defendant filed a motion to dismiss alleging that Ms. Verdecchia's complaint was time barred. The

PHRC issued a Reply to the Defendant's motion to dismiss in which the PHRC denied the motion. In its denial, the PHRC explained that the "short form complaint was timely filed with the Pennsylvania Human Relations Commission on April 1, 1996, alleging a discriminatory act which occurred on or about *October 2, 1995* as required by 16 Pa.Code § 42.14(d)." (*Commission Reply to Respondent's Motion to Dismiss,* at ¶ 1 (emphasis added) (Ex. 8 to Plaintiff's Appendix).)

On October 28, 1998, the PHRC issued a letter to Ms. Verdecchia stating that the "investigation of your complaint of discrimination revealed the commission does not have jurisdiction over this matter because your complaint was filed untimely." (Ex. 9 to Plaintiff's Appendix; Ex. P to Supplemental Affidavit of McCullough.) The letter went on to explain

> Initially an interlocutory order had been issued based upon your assertion that the discriminatory act had occurred on *October 2, 1995.* The investigation revealed that the acts you allege are discriminatory actually occurred on *September 29, 1995,* as evidenced by notes made by you in your log.

(*Id.* (emphasis added)) The letter concluded by advising that the case would be forwarded for further review and if the initial determination—that the PHRC lacked jurisdiction because the complaint was untimely—was found to be deficient, the case would be returned to the PHRC for further review. (*Id.*) However, the letter also explained that if "all the reviewers concur with the findings and the recommendation that this case be closed as 'Lack of Jurisdiction,' you will be informed by mail." (*Id.*) This letter was also sent to Ms. Verdecchia's attorney.

On November 19, 1998, the PHRC informed Ms. Verdecchia (and her attorney) that the PHRC had reviewed the com-

plaint and determined that it should be closed administratively. (Ex. 10 to Plaintiff's Appendix; Ex. Q to Supplemental Affidavit of McCullough.) The letter further stated that "You have been informed by your investigator of the reasons for this determination." (*Id.*) As set forth above, those reasons were that the complaint was filed untimely because the investigation revealed that the discriminatory act occurred on September 29, 1995, and not on October 2, 1995, as alleged in Plaintiff's short form complaint and later filed complaints.

Thus, contrary to Plaintiff's argument, the PHRC did determine that her complaint based on her demotion was untimely filed under the PHRA, even when considering the short form complaint filed on April 1, 1996. Therefore, partial summary judgment is appropriate as to Count III's disability discrimination claim under the PHRA based on demotion.

With regard to the claim of unlawful demotion asserted under the ADA, however, we note that in light of the April 1, 1996 short form complaint that this claim was timely filed within 300 days of September 29, 1995. Of course, we have previously dismissed Plaintiff's ADA claim.

## C. Defendants' Remaining Arguments

Defendants also submit that summary judgment as a matter of law is appropriate as to all of Plaintiff's claims because she is unable to establish a *prima facie* case of discrimination. Alternatively, Defendants argue that Ms. Verdecchia is unable to refute Defendants' legitimate nondiscriminatory reasons for the alleged disparate treatment, demotion and discharge. We address these arguments briefly.

The familiar *McDonnell Douglas* analysis requires: "first, that the plaintiff establish a *prima facie* case of employment discrimination; second, that the employer proffer a nondiscriminatory reason for its

adverse employment action; and third, that the plaintiff must then show that the employer's proffered explanations were pretextual." *Williams v. Shenango, Inc.,* 986 F.Supp. 309, 318 (W.D.Pa.1997) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see also Goosby v. Johnson & Johnson Medical, Inc.,* 228 F.3d 313 (3d Cir.2000). Once a plaintiff sets forth a *prima facie* case, the defendant has the relatively light burden of coming forward with a legitimate, non-discriminatory reason for the adverse employment decision. *Goosby,* 228 F.3d at 319. "If the employer is able to proffer a legitimate non-discriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination." *Id.*

"In order to survive a motion for summary judgment in a pretext case, the plaintiff must now produce 'sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action.'" *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 504 (3d Cir.1997) (citing *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1067 (3d Cir.1996) (*en banc*), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997)). A "plaintiff may defeat a motion for summary judgment (or judgment as a matter of law) by pointing 'to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Jones v. School District of Phila.,* 198 F.3d 403, 413 (3d Cir.1999) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994)) and *Sheridan,* 100 F.3d at 1067.

As to the first prong, the Third Circuit has explained:

> To discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.

*Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108–09 (3d Cir.1997) (quoting *Fuentes*, 32 F.3d at 765). " 'The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].' " *Keller*, 130 F.3d at 1109 (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996)). "In simpler terms, [the plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller*, 130 F.3d at 1109.

As to the second prong, the plaintiff must "identify evidence in the summary judgment record that 'allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.' " *Id.* at 1111 (quoting *Fuentes*, 32 F.3d at 762). "In other words, under this prong, [the plaintiff] must point to evidence that proves ... discrimination in the same way that critical facts are generally proved—based solely on the natural probative force of the evidence." *Keller*, 130 F.3d at 1111. " 'For example, the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class.' " *Jones*, 198 F.3d at 413 (quoting *Simpson v. Kay Jewelers, Division of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir.1998)).

■ Defendants move to dismiss the ADA claim for failure to state a cause of action because they claim Plaintiff has failed to establish that she is a disabled person within the meaning of the ADA.

"[T]he ADA's employment provisions specifically limit its protections to those individuals who can establish that they are indeed 'disabled.' " *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 356 (3d Cir.2000). A " 'disability' " is defined as either (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such [an] individual"; (2) "a record of such impairment"; or (3) "being regarded as having such an impairment." *Id.*, at 359 (citing 42 U.S.C. § 12102(2)(A)-(C)). "It is, of course, an axiom of any ADA claim that the plaintiff be disabled and that the employer be aware of the disability." *Jones v. United Parcel Service*, 214 F.3d 402, 406 (3d Cir. 2000).

The record evidence suggests that genuine issues of material fact exist on the question of whether Plaintiff has established that she is disabled, and in particular, whether she was regarded as being disabled.

■ In contrast, our review of the record evidence demonstrates that there is no genuine issue of material fact as to whether Ms. Verdecchia was actually discharged. We conclude that no reasonable fact finder could determine that Defendants terminated Ms. Verdecchia. Particularly telling in this regard is Ms. Verdecchia's failure to

attempt to make meaningful contact with her employer during the duration of her recovery concerning her return to work. Specifically, the record evidence demonstrates that there is no genuine issue of material fact that she did not contact her employer after her doctor cleared her to return to work on July 1, 1996. (Verdecchia Deposition, at 189–196; 231–234.)

Instead, she showed up at work on July 8, 1996, and after surprising her coworkers and employer she filed for unemployment compensation. She then continued to engage in contact with Mr. Prozan for the next two weeks concerning her return to work. She never mentioned that she had already concluded that she was fired on July 8, 1996, and was seeking unemployment compensation and pursuing discrimination charges. We fail to see any record evidence demonstrating that she was terminated. Rather, the evidence shows that Mr. Prozan was willing to have her return to work after her recovery, and did not lose this intention until he was served with notice that Ms. Verdecchia had filed for unemployment compensation claiming that she had been fired.

 Even if the events could be construed as a discharge, the same record evidence shows that Plaintiff cannot refute Defendants' legitimate nondiscriminatory reasons for the discharge. Finally, we also conclude that Plaintiff cannot refute Defendants' claim that economic and business factors motivated the decision to temporarily demote Ms. Verdecchia and the decision not to grant her a paid leave of absence. Defendants have submitted abundant non-refuted record evidence supporting this claim.

## IV. Conclusion

We conclude that we do not have jurisdiction over Plaintiff's federal civil rights employment discrimination claims because Defendants are not employers as defined by the applicable laws. We also decline to exercise our supplemental jurisdiction over Plaintiff's state law claims. In addition, we will grant summary judgment in the alternative as to Plaintiff's claims where she either failed to exhaust her administrative remedies or where the claim was time-barred. Finally, we addressed the substance of Plaintiff's claims in order to show that our review of the record evidence also supports the granting of summary judgment on the merits of her claim.

An appropriate Order will be entered.

## Order

AND NOW, to-wit, this *30th* day of July, 2003, after careful consideration and for the reasons set forth in the Opinion accompanying this Order, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion for Summary Judgment (**Doc.23**) be and hereby is GRANTED as follows:

1. **a.** as to Counts I and II, Summary Judgment as a matter of law is GRANTED in favor of Defendants and against Plaintiff; Counts I and II are hereby dismissed;

 **b.** as to Counts III and IV, we decline to exercise supplemental jurisdiction over these state law claims, accordingly, Counts III and IV are hereby dismissed.

2. **a.** as to Plaintiff's age discrimination claims based upon her alleged demotion and discharge summary Judgment is GRANTED in favor of Defendants and against Plaintiff based upon the failure to exhaust administrative remedies;

 **b.** as to Plaintiffs Disability discrimination claim based upon her alleged demotion asserted under the PHRA summary Judgment is GRANTED in favor of Defendants and against Plaintiff because said claim is barred by the limitations period.

3. The Complaint is dismissed and the Clerk of Courts be and hereby is directed to mark this case closed.