John S. MATHESON, Plaintiff,

v.

VIRGIN ISLANDS COMMUNITY BANK, CORP., and Jeffrey Prosser Defendants.

No. CIV.A.01–CV–0063(STT).

District Court, Virgin Islands, Appellate Division, D. St. Croix.

Dec. 19, 2003.

Lee J. Rohn, Law Offices of Lee J. Rohn, Christiansted, VI, for Plaintiff.

Andrew C. Simpson, Law Offices of Andrew C. Simpson, P.C., Christiansted, VI, for Defendants.

Paul J. Ruskin, Esq., Jersey City, NJ, for Defendants.

## OPINION REGARDING DEFENDANT'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT

BROTMAN, District Judge, (Sitting by Designation).

Plaintiff John Matheson (hereafter "Plaintiff" or "Matheson") filed this action against his employer, Virgin Islands Community Bank Corp., (hereafter "Defendant" or "VICB") and its sole shareholder, Jeffrey Prosser, (hereafter "Defendant" or "Prosser") asserting the following claims: (1) employment discrimination in violation of Title VII, 42 U.S.C. § 2000e (Count I); (2) age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et. seq. (Count II); (3) disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, et. seq. (Count III); (4) wrongful discharge in violation of 24 V.I.C. § 62 (Count IV); (5) Civil Rights violations pursuant to 10 V.I.C. § 1 (Count V); (6) misrepresentation (Count VI); (7) fraud (Count VII); (8) termination with the intent to deprive plaintiff of his pension in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et. seq. (Count VIII); (9) breach of contract (Count IX); (10) negligent infliction of emotional distress (Count X); (11) breach of duty of good faith and fair dealing (Count XI). Plaintiff also seeks punitive damages (Counts XII–XIII). Presently before this Court are Defendants VICB's and Jeffrey Prosser's motions for dismissal of Plaintiff's claims

for disability discrimination and wrongful discharge (Counts III and IV) pursuant to Fed.R.Civ.P. 12(b)(6), and Defendant Jeffrey Prosser's motion for summary judgment as to all Counts pursuant to Fed. R. Civ. R. 56. For the reasons set forth below, the Court will Grant Defendants' motion for dismissal as to Plaintiff's ADA claim and will deny dismissal as to Plaintiff's Wrongful Discharge Claim. The Court will grant Defendant Prosser's motion for summary judgment as to the remaining Counts.

## I. JURISDICTION

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, ("federal question"), for claims brought under ERISA and Title VII, and will exercise supplemental jurisdiction over Virgin Islands claims pursuant to 28 U.S.C. § 1367.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On July 31, 1997, Plaintiff John Matheson accepted an offer of employment for the position of Vice President and Senior Loan Officer from President and CEO Michael Dow (hereafter "Dow") of the Virgin Islands' Community Bank. (Def.'s Memorandum in Supp. of Summ. Judg. Motion at Exhibit B). Defendant Jeffrey Prosser, through his capacity as Chairman of the Board of VICB, voted in favor of the decision to hire Matheson.[1] (Aff. of Jeffrey Prosser at ¶ 7). Under the terms of the offer, Matheson was to answer directly to Dow, and to receive a salary of $70,000 per year, along with various company benefits, including health and life insurance, a 401K plan and the use of a company vehicle. (Id.). Matheson's employment commenced on August 11, 1997.

Sometime in July 2000, VICB was subject to an FDIC audit which revealed a procedural deficiency, specifically, that overdrafts were not being reported to the Board as required by federal banking regulations. (Pl.'s Comp. at ¶ 23). Matheson had the authority in his capacity as Senior Loan Officer to approve overdrafts ("ODA Authority"), which he claims he reviewed with Dow on a regular basis. (Pl.'s Compl. at ¶ 33). At the time of the audit, the Bank's overdrafts had reached about $1.5 million. (Def.'s Mem. In Support of Mot. For Summ. Judg. at 2). Dow removed Matheson's lending authority on September 11, 2000 for "approving overdrafts in excess of his authority." (Def.'s Answer to Compl. at ¶¶ 33,39). Prosser became aware of the total amount of the overdrafts during a telephone conference conducted on September 15, 2000 between himself, Matheson, Dow, and board member Dawn Prosser. (Id. at ¶ 29).

On September 19, 2000, VICB's Board, including Defendant Prosser, met and voted to terminate Matheson by unanimous consent "due to certain findings . . . respecting the management of certain matters under his authority." (Def.'s Mem. In Support of Mot. For Summary Judgment at Exhibit C). Apparently in response to the findings of the FDIC audit, the Board also voted on that same day to create a Credit Committee (comprised of Jeffrey Prosser, Dawn Prosser and John Raynor) and implement an overdraft policy in which "any and all pending residential or personal credit facilities exceeding U.S.

---

1. Prosser's position as Chairman of the Board was designated as "an honorary position" by Board resolution dated December 30, 1994. Accordingly, he was "not authorized to participate in operating management and major policy making functions of the bank otherwise than in the capacity of a director of the bank." (Def.'s Mem. in Supp. of Summ. Judg. at Exhibit A).

$100,000 and any and all amendments to existing residential or personal credit facilities ... must be submitted by the loan officers to the Credit Committee for its review and approval." (Def.'s Mem. In Supp. of Mot. For Summ. Judg. at Exh. C). On September 21, 2000 VICB attorney Kevin Rames informed Matheson of the Board's determination and requested that Matheson resign and surrender his company vehicle. (Def.'s Answer to Compl. at ¶ 41).

The Board, including Jeffrey Prosser, Dawn Prosser, John Raynor, J'Ada Finch–Sheen, and Michael Dow, convened by teleconference on October 27, 2000 to discuss the events surrounding Matheson's termination and other related matters. (Def.'s Mem. In Support of Mot. for Summ. Judg. at Exhibit D). During that conference the Board discussed statements made by Matheson that he planned to file suit against the bank for being used as a "sacrificial lamb." (Id.) The Board raised the possibility of a counter suit against Matheson and reaffirmed its decision to terminate stating:

> [Matheson] clearly handled customers' accounts as he pleased, arbitrarily rolling over notes and altering maturity dates, besides allowing overdrafts as high as $1.5 million and hand-writing and processing documentation for certain loans, circumventing the normal procedure via bank counsel. In addition, he arranged for advances to himself on his loan and to have extensions to the maturity date which is a possible Reg. O violation.

*Id.*

The Board also decided to discipline a mortgage loan manager for "extending maturity dates of construction loans in the computer without appropriate approvals or modification of loan documentation." (Id.)

Matheson filed a claim with the Department of Labor and the EEOC on March 20, 2001, claiming discrimination based upon race, color, national origin, age, and physical limitations. (Pl.'s Complaint at ¶ 62). On May 7, 2001, Matheson filed a thirteen-count complaint against Jeffrey Prosser and VICB alleging civil rights (based on national origin) under both federal and Virgin Islands law, disability age discrimination and ERISA violations, along with claims for wrongful discharge, fraud and misrepresentation, and seeking punitive damages. Virgin Islands Community Bank filed a counter suit on July 13, 2001 alleging breach of fiduciary duty, negligence, breach of contract, disclosure of confidential information, and seeking declaratory judgment with respect to damages. Prosser moved for summary judgment as to all counts on October 29, 2001. Shortly thereafter, VICB and Prosser moved to dismiss Matheson's ADA and wrongful discharge claims.

### III. *LEGAL STANDARD FOR MOTION TO DISMISS*

■ Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Bostic v. AT & T of the Virgin Islands,* 166 F.Supp.2d 350, 354 (D.Vi. 2001); *Mingolla v. Minnesota Mining & Mfg. Co.,* 893 F.Supp. 499, 503 (D.Vi.1995). The issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90

(1974). While the rules do not dictate a plaintiff set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Schanzer v. Rutgers Univ.*, 934 F.Supp. 669, 673 (D.N.J.1996).

■ In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must consider only those facts alleged in the complaint and accept all of the allegations as true, drawing all reasonable inferences in the plaintiff's favor. *ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir.1993); *Bostic*, 166 F.Supp.2d at 354; *In re Tutu Wells Contamination Litig.*, 40 V.I. 279, 32 F.Supp.2d 808 (D.Vi. 1998); *Julien v. Committee of Bar Examiners*, 923 F.Supp. 707, 713 (D.Vi.1996). Legal conclusions offered in the guise of factual allegations, however, are given no presumption of truthfulness. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). *See also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993) (the Court is not "required to accept legal conclusions either alleged or inferred from the pleaded facts."). Finally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (noting this procedure "streamlines litigation by dispensing with needless discovery and fact-finding").

## IV. DEFENDANTS' PROSSER AND VICB'S PARTIAL DISMISSAL MOTIONS

Defendants Prosser and VICB seek dismissal of Count III (disability discrimina-tion), claiming that Plaintiff has failed to plead he has a physical impairment within the meaning of the ADA, and Count IV (Wrongful Discharge) claiming that Plaintiff is excluded from the class of individuals who have a right to bring a claim under the Virgin Islands Wrongful Discharge Act. Plaintiff objects to dismissal of his ADA claim, arguing that his claim, which asserts that "stress and medical conditions, which caused [plaintiff] to become ill and disabled him from working multiple days a week for long hours each day" satisfies Fed.R.Civ.P. 8(a). As to the Wrongful Discharge claim, Plaintiff contends that applying amendments to the Wrongful Discharge Act which exclude Plaintiff from the class of persons protected under the Act would require an improper retroactive construction. For the reasons set forth below, the Court will grant Defendants Prosser and VICB's motion to dismiss Plaintiff's ADA claim and will deny VICB's motion to dismiss Plaintiff's wrongful discharge claim. Prosser's motion for summary judgment on the wrongful discharge claim will be discussed later in this opinion.

### A. ADA Claim (Count III)

Defendants VICB and Jeffrey Prosser seek to dismiss Plaintiff's ADA claim, arguing that Plaintiff fails to plead that he has a disability within the meaning of the ADA. Plaintiff argues that the pleadings, which allege that "[a]s a result of his illness Plaintiff became disabled from working multiple days a week for long hours each day" satisfies the "short and plain statement" requirement under Fed. R.Civ.P. 8(a). Because the Court finds that Plaintiff fails to state a claim for which relief can be granted, Plaintiff's ADA claim will be dismissed.

■ The ADA was enacted to eliminate discrimination against individuals with

disabilities and provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... [the] discharge of employees and other terms of, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case under the ADA, a plaintiff must show that (1) he has a disability, (2) he is a qualified individual, and (3) he was discriminated against because of the disability. *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996). An employer discriminates against a qualified individual if it does not "make reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodations would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A). A plaintiff must also show that the employer had actual or constructive knowledge of the disability. *Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F.3d 907, 910 (11th Cir.1996).

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual ...." 42 U.S.C. § 12102(2)(A). It is not enough that a plaintiff is affected by a physical impairment, rather, it must be one that "substantially limits the ability to engage in the activity." *Marinelli v. City of Erie, Pennsylvania,* 216 F.3d 354, 361 (3rd Cir.2000). An individual is "substantially limited" if he is (1) unable to perform a major life activity that the average person in the general population can perform, or; (2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can per-

form that same major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). A "mental impairment" for the purposes of the ADA is "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Although the statute does not define "major life activities" the EEOC has issued regulations which describe major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). With respect to the major life activity of working, the term "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training." 29 C.F.R. § 1630.2(j)(3)(i).

■ In the present case, Plaintiff characterizes his disability as an "illness" which resulted from "being forced to work with insufficient staff, lack of written procedures and proper supervision and working excessive hours" which prohibited him from "working multiple days a week for long hours each day." (Pl.'s Complaint at ¶¶ 76–77). Plaintiff also alleges that Defendants failed to provide "reasonable accommodations" and that Plaintiff was terminated because of his disabilities. (Pl.'s Complaint at ¶¶ 78–79). Although Plaintiff does not specifically name his disability, he does allege that he "had to be placed under a doctor's care due to the heavy work load" and that he suffered from "stress and medical conditions directly related to the misrepresentations of Defendants." (Pl.'s Compl. at ¶¶ 12, 47).

■ Plaintiff's ADA claim must fail for a number of reasons. To begin, the pleadings are so vague and Plaintiff's disability

so undefined that the Court is forced to assume what disability is alleged. For this reason, it is appropriate to dismiss at the pleading stage without entertaining questions of proof. *See Harrison v. New York City Housing Authority*, 2001 WL 1658243 at *1 (S.D.N.Y., Dec. 26, 2001) (dismissal of ADA claim appropriate where plaintiff fails to define her disability). However, even accepting, as Plaintiff urges, a liberal construction of Plaintiff's complaint "with all reasonable inferences drawn in Plaintiff's favor," the Court can only conclude that Plaintiff's primary alleged disability is work-related stress. (Pl.'s Opp. to Def.'s Partial Mot. to Dismiss at 2). Based on allegations of generalized stress, the claim must also be dismissed as failing to satisfy the second element of Plaintiff's *prima facie* case, that is, that he suffers from a disability within the meaning of the ADA. Federal courts have consistently found that stress, without more, is not a disability under the ADA. *See Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3rd Cir. 1998) (stating in dicta that a plaintiff who is unable to work with individuals who cause him "prolonged and inordinate stress" cannot be said to be incapable of performing a "class of jobs or a broad range of jobs in various classes" within the meaning of the ADA); *O'Neal v. Atlanta Gas and Light*, 968 F.Supp. 721 (S.D.Ga. 1997)(an employee's "nerve problem" or "stress disorder" which resulted in weight loss and sleeplessness was not a disability, and to hold so would "expand the scope of the ADA well beyond the scope of disabilities that Congress intended to cover under the Act"); *Harrison v. New York City Hous. Auth.*, 2001 WL 1658243 at * 2 (S.D.N.Y. Dec.2001) (plaintiff who suffered work-related stress due to her relationship with her supervisors is not disabled within the definition of the ADA).

Although Plaintiff correctly asserts that "the complaint will withstand a Fed. R.Civ.P. 12(b)(6) attack if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery and plaintiff need not establish every element," the Plaintiff must still at least allege some actionable disability to withstand dismissal. *See Verdecchia v. Prozan*, 274 F.Supp.2d 712, 727 (W.D.Pa.2003) ("It is ... an axiom of any ADA claim that the plaintiff be disabled and that the employee be aware of that disability"). Thus, Plaintiff's contention that Defendants improperly rely on issues of "proof" based on *Toyota Motor Manufacturing, Kentucky, Inc., v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) which establishes the elements that must be *proven* under the ADA, does not undermine Defendants' argument that Plaintiff fails to plead a disability as required by Fed.R.Civ.P. 12(b)(6). Contrary to Plaintiff's contention that it is inappropriate to discuss cases which establish what must be *proven* under the ADA, the Court must entertain the *prima facie* elements of Plaintiff's claim in order to determine, based upon the 12(b)(6) standard, whether Plaintiff can prove "any set of facts consistent with the allegations of the complaint that would sustain recovery." ( *See* Pl.'s Opp. to Def.'s Part. Mot. to Dismiss, citing *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3rd Cir. 1998)). Plaintiff's contention that he "suffered from stress and medical conditions directly related to the misrepresentations of the defendants" also suggests that plaintiff's alleged disability was caused by the events surrounding his termination and therefore cannot warrant consideration as a disability for which he sought and was denied accommodations during employment as required under the ADA. (Pl.'s Compl. at ¶ 47). This conclusion is further supported by Plaintiff's representations that his "exceptional job performance"

warranted "large merit increase[s]," and that through his efforts he "substantially increased the commercial loans, consumer loans and residential mortgages." (Pl.'s Compl. at ¶¶ 8, 10). Plaintiff can hardly claim a disability impeded his performance prior to termination in light of his own professed ability to perform his job at such a high level.

█ The second element of Plaintiff's claim is also not met because an inability to "work multiple days a week for long hours each day" is not a physical impairment which substantially limited his ability to work. (Pl.'s Compl. at ¶ 77). A person whose condition prohibits working more than forty hours per week does not suffer a limitation "substantial enough to rise to the level of a protected disability under the ADA." *Duff v. Lobdell–Emery Mfg. Co.,* 926 F.Supp. 799, 807 (N.D.Ind.1996). *See also, Kellogg v. Union Pac. R.R. Co.,* 233 F.3d 1083, 1087 (8th Cir.2000) ("An employee is not substantially limited in the major life activity of working by virtue of being confined to a forty-hour week"). Based on the above elements, the Court finds that Plaintiff can offer no facts which would sustain his claim. In summary, although he fails to name his disability, even if the Court assumes he alleges a "stress" ailment, generalized "stress" is not a disability within the meaning of the ADA. Moreover, Plaintiff's inability to work beyond a regular work week is not an impairment of a major life activity for the purposes of establishing a disability. For those reasons, the Court will grant Defendants Prosser and VICB's motion to dismiss.

### B. Wrongful Discharge Claim (Count IV)

Defendants argues that Plaintiff cannot maintain a wrongful discharge claim because the Wrongful Discharge Act (hereafter "WDA" or "Act") excludes executives from the Act's protection. Orginally, the WDA afforded protection from wrongful discharge for "employees," including "any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute because of any unfair labor practice ...." 24 V.I.C. § 62. On February 1, 2001, the definition of "employee" was amended to exclude "any individual employed in a bonafide position in an executive or professional capacity." *Id.* Plaintiff filed his complaint on May 4, 2001, three months after the Act was amended. However, Plaintiff argues that since the conduct which triggers the Act's protection—wrongful discharge—occurred in September 2000, five months before the act was amended, applying the amended provision would constitute an improper retroactive application. The Court agrees with Plaintiff that the cause of action accrued prior to amendments to the WDA and applying the current law would require an improper retroactive application of the statute. The Court will therefore deny Defendant VICB's motion to dismiss. Plaintiff's wrongful discharge claim against Defendant Prosser will be addressed later in this opinion.

The Court's task is to determine whether the statute's exclusionary language under the WDA's amendments should be given force or whether the Court should rely on the language in effect at the time Plaintiff was terminated. Essentially, the Court must decide whether this case presents a problem of retroactivity. In making its determination, the Court will rely on the preeminent Supreme Court case, *Landgraf v. US.I Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf* the Court restated the maxim that "retroactivity is not favored in the law," explaining that elementary considerations of fairness "dictate

that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted," and "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Id.* 264, 114 S.Ct. 1483. The Court established a two-part analysis for considering the temporal reach of a statute:

> When a case implicates a [statute] enacted after the vents in the suit, the court's first task is to determine whether [the Legislature] has expressly prescribed the statute's proper reach. If [the Legislature] has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear intent.

*Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483.

■ Based on the *Landgraf* test, in cases such as the present matter where the Legislature has not prescribed the statute's temporal reach, the ultimate question for the Court is whether the statute has a "retroactive effect." This inquiry refers to the consequence that the statute would have if applied retrospectively, i.e "would it reach back in time and alter the rights or obligations on which the parties relied prior to the statute's passage?" *Mathews v. Kidder, Peabody & Co. Inc.,* 161 F.3d 156, 160 at n. 5 (3rd Cir.1998). Thus, it is the ultimate impact of the new legislation that is central to the inquiry; a statute does not "operate retrospectively because it is applied to a case arising from conduct antedating the statute's enactment." *Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483. Rather, the Court must ask "whether the provision attaches new legal consequences." *Id.* This analysis is not mechanical but instead must rely on a judicial instinct. *See Id.* ("Any test of retroactivity will leave room for disagreement in hard cases ... However, retroactivity is a matter on which judges tend to have 'sound instincts'"). One factor courts have relied on in deciding whether a statute attaches new legal consequences is whether the statutory provision at issue affects a parties substantive rights or whether the statute merely impacts procedural rules. See *Vernon v. Cassadaga Valley Central School,* 49 F.3d 886, 890 (2d Cir.1995)("No one has a vested right in any given mode of procedure," citing *Crane v. Hahlo,* 258 U.S. 142, 147, 42 S.Ct. 214, 66 L.Ed. 514 (1922)); *McAndrews v. Fleet Bank of Massachusetts, N.A.,* 989 F.2d 13, 16 (1st Cir.1993) ("It is a settled rule that courts should not apply statutes retroactively when doing so would significantly impair *substantive rights* ") (emphasis added).

■ In the present case, since the legislature has not spoken as to the statute's temporal reach, and a wrongful discharge claim is an issue of substance and not procedure, it is appropriate for the Court to entertain whether the amendments which preclude Plaintiff's claim have a retroactive effect by altering Plaintiff's rights. Courts are split as to whether a Plaintiff's rights vest at the time the conduct occurs or rather when the complaint is filed. In *Kolfenbach v. Mansour,* 36 F.Supp.2d 1351, 1354 (S.D.Fla.1999), the Court held that an amendment to the Private Securities Litigation Reform Act (PRLA), which barred Plaintiff's claim, was not an impermissible retroactive application of the stat-

ute that impaired his rights because "[t]here is a difference between extinguishing some amorphous possibility of bringing a claim, and the right to pursue a claim once brought." The Court distinguished this scenario from cases in which plaintiffs filed suit before amendments became effective where the right to bring a claim had already vested. However, the 3rd Circuit in *Mathews v. Kidder, Peabody & Co.*, 161 F.3d 156 (3rd Cir.1998), found that plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) which were eliminated by a section of the Private Securities Litigation Reform Act (PRLA) could not bar claims that were accrued prior to passage. Although in this case, plaintiff's claim had already been filed when the PRLA enactment eliminated his RICO claim, the Court affirmed the District Court's ruling that plaintiff could amend his claim to add similarly situated plaintiffs. In reaching its decision, the Court reasoned that application of the RICO amendment would "have the effect of depriving plaintiffs of a claim," and that "destroying a cause of action" was sufficient to find a party's rights were impaired such that improper retroactive effect occurred under the *Landgraf* test. *Id.* at 166. The Court follows the reasoning of the 3rd Circuit. Since the Court has determined that the Virgin Islands Wrongful Discharge Act is a statute which governs substantive rights, it follows that the conduct triggering the Act's protection—the alleged wrongful discharge—determines when Plaintiff's rights vest, and not the filing of the claim.

Defendant contends that the amendments to the WDA are intended to be prospective and therefore should be given full effect. However, Defendant's argument fails to engage the analysis dictated by Landgraf, which requires a determination that amended legislation, which is considered to be prospective as a default, does not impair a right that previously existed in its application. In this case, since this amendments create "new legal consequences," by denying Plaintiff a cause of action that would have existed when the conduct triggering the statute's protection occurred, the statute's application would create an improper retroactive effect. The Court will deny Defendant's motion to dismiss.

## V. LEGAL STANDARD FOR SUMMARY JUDGMENT

The standard for granting a motion for summary judgment is a stringent one, but it is not insurmountable. Federal Rule of Civil Procedure 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir.1996). *See also Sharpe v. West Indian Co.*, 118 F.Supp.2d 646, 648 (D.Vi.2000). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence such that a reasonable jury could return a verdict for the nonmoving party." *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing

the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); see also *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or … vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## VI. PROSSER'S MOTION FOR SUMMARY JUDGMENT

Defendant Jeffrey Prosser seeks summary judgment on all remaining counts: Title VII (Count I), Age Discrimination (Count II), Wrongful Discharge (Count IV), Misrepresentation (Count VI), Fraud (Count VII), ERISA violations (Count VIII) Breach of Contract and Fair Dealing (Counts IX and XI) and Emotional Distress (Count X). Because Plaintiff did not file a timely opposition to Defendant's summary judgment motion, the motion is unopposed.[2] Under Local Rule 56.1, "facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor*, 85 F.Supp.2d 391, 408 n. 26 (D.N.J.2000) (Brotman, J.) Accordingly, Prosser's uncontested facts are deemed admitted. In each instance Prosser essentially claims that he is not the right defendant because as shareholder he is not the employing entity. The Court agrees with Prosser that he did not act outside the employment relationship in his dealings with Matheson, and is not individually liable. The Court will therefore grant this Defendant's motion for summary judgment with respect to all remaining counts.

### A. Title VII and Discrimination Claims (Counts I–II, V)

■ Counts I, II and V of Plaintiff's complaint assert that Prosser is individually liable for alleged discriminatory acts in violation of Title VII, ADEA and the Civil Rights Laws of the Virgin Islands. With respect to Plaintiff's Title VII claim, Matheson specifically contends that Pros-

**2.** Plaintiff initially sought and Magistrate Judge Resnick granted additional time pursuant to Rule 56(f) to complete discovery and to respond to Prosser's motion. By order dated January 2002, Judge Resnick set Plaintiff's deadline at May 3, 2002 to conduct discovery and respond to the issues raised by Prosser's summary judgment motion. In his order, Judge Resnick cautioned that "Plaintiff must be diligent in such regard" and noted that Plaintiff had not yet filed any appropriate motions "with regard to asserted inadequacy of Prosser's discovery responses." On May 9, 2002—six days after Plaintiff's deadline to complete discovery and file opposition— Plaintiff filed a motion for an extension of time to respond to Prosser's summary judg- ment motion. Judge Resnick denied Plaintiff's motion by order dated June 6, 2002. Plaintiff has since appealed Magistrate Resnick's June 6, 2002 order and this Court has affirmed that ruling. In the interim, Plaintiff submitted an affidavit, ostensibly pursuant to Rule 6(d), which this Court has reviewed but will not consider, since it attempts to put forth Plaintiff's opposition by way of affidavit, which was refused by Judge Resnick. For this reason, the Court deems Defendant's motions for sanctions with respect to plaintiff's affidavit submission moot. Plaintiff should, however, find solace in this Court's conclusion that the affidavit would not change the Court's result and therefore the admission of that affidavit is immaterial.

ser has "consistently shown an illegal discriminatory preference towards persons from Guyana and against persons not from Guyana." As to Plaintiff's ADEA claim, Matheson alleges that "Defendant[ ] retained others who had engaged in worse conduct than Plaintiff but who are younger than Plaintiff." (Pl.'s Compl. at Count II–III).

The Third Circuit and a clear majority of courts of appeals, along with Virgin Island courts, have held that individual employees cannot be held liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3rd Cir. 1996); *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d Cir.1995); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir.), cert. denied, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Manns v. Leather Shop Inc.*, 960 F.Supp. 925 (D.Vi.1997). Congress limited liability under Title VII to employers with "fifteen or more employees" in order to shield small business from having the burden of litigating discrimination claims. *Manns*, 960 F.Supp. at 928 ("placing the burden to litigate discrimination cases on individuals would go against the intent of Congress"). Accordingly, courts have found that individuals who have not met the definition of employer are not liable employers under Title VII. *Id.* Neither are sole owners or individual shareholders who have not met the definition of employer liable employers under Title VII.. *Id.* See also, *Larmore v. RCP/JAS, Inc.*, 1998 WL 372647 * 3 (E.D.Pa. 1998); *Milliner v. Enck*, 1998 WL 303725 * 2 (E.D.Pa.1998). Because of the similar objectives advanced by Title VII and the ADEA, courts have extended that same reasoning to prohibit individual liability under the ADEA. *See Waring v. City of Philadelphia*, 1996 WL 208348 * 2 (E.D.Pa.1996). Based on the forgoing, the Court is satisfied that Prosser, as sole

shareholder, cannot be held individually liable for any alleged discrimination under Title VII or the ADEA. Defendant's motion with respect to these counts will be granted.

### B. Virgin Islands Civil Rights Act Claims

■ Count V of Plaintiff's complaint alleges that "the actions of [Defendant Prosser] constitute violations of the Civil Rights laws of the United States Virgin Islands." (Pl.'s Compl. at ¶ 85). Since Plaintiff does not specify what violations are claimed, the Court can only assume that this claim mirrors Plaintiff's Title VII claim.

Under the Civil Rights Act of the Virgin Islands, a person is subject to liability for discrimination "on account of race, creed, color, or national origin" if that person is an "owner, proprietor, superintendent, manager, agent, or employee." See 10 V.I.C. § 3(b). The Court has already established that Prosser did not act outside of his capacity as shareholder and board member with respect to Plaintiff's termination, and that as sole shareholder, (for reasons discussed more fully below in section C of this opinion which discusses "piercing the corporate veil"), he is not an "owner, proprietor, superintendent, manager, agent or employee" under the Virgin Islands Civil Rights Act. Prosser did not individually terminate Plaintiff. Instead, he voted, along with the other members of the Board, to terminate Matheson for cause. In reaching their decision to terminate, the Board determined that Plaintiff "handled customers' accounts as he pleased, arbitrarily rolling over notes and altering maturity dates, besides allowing overdrafts as high as $1.5 million and hand-writing and processing documentation for certain loans, circumventing the normal procedure via bank counsel. In

addition, he arranged for advances to himself on his loan and to have extensions to the maturity date which is a possible Reg. O violation." That termination was carried out by VICB attorney Kevin Rames. Furthermore, Plaintiff in no way suggests that Prosser acted individually to bring about the termination. For these reasons, Plaintiff's Virgin Islands Civil Rights claim must also fail. The Court will grant Prosser's motion for summary judgment.

### C. Contract, Tort and ERISA Claims (Counts VIVIII, IX–X)

■ Unlike Plaintiff's Title VII and ADEA claims, which preclude individual liability, Plaintiff's contract, tort and ERISA claims may be leveled against a corporate officer if it can be shown that "the shareholder or officer is doing business in his or her individual capacity without regard to corporate formality," that is, whether it is appropriate to "pierce the corporate veil." *Strojmaterialintorg, v. Russian American Commercial Corp.*, 815 F.Supp. 103 (E.D.N.Y.1993); *see also Trustees of the National Elevator Industry v. Lutyk*, 332 F.3d 188, 192 (affirming District Court's finding that ERISA liability can be maintained against sole shareholder where shareholder's siphoning funds during a period when the company was "deeply insolvent" warranted piercing corporate veil).

■ Piercing the corporate veil is " an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation." *Id.* at 192. Application of this remedy is appropriate when the court must "prevent fraud, injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability." *Pearson v. Component Technology Corp.*, 247 F.3d 471,

484 (3rd Cir.2001). In deciding when the court should pierce the corporate veil, the Third Circuit considers the following factors: (1) whether the corporation suffers from gross undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency of debtor corporation; (5) siphoning of funds from the debtor corporation from the dominant stockholder; (6) nonfunctioning of officers (7) absence of corporate records, and (8) whether the corporation is merely a facade for the operation of the dominant stockholder. *Id.* at 484–485 Because a finding of derivative liability is akin to fraud, it must be shown by clear and convincing evidence. *Trustees*, 332 F.3d at 192. It is not enough to make "mere conclusory allegations that the shareholder is an 'alter-ego' of a corporation". *Strojmaterialintorg*, 815 F.Supp. at 105. Here, Plaintiff's claims amount to nothing more than conclusory allegations that Prosser was involved in the Bank's operations.

■ Under the factors enunciated in the above test, there is no evidence that the Bank is a "sham" that operates as a facade for Prosser. To the contrary, by Board resolution dated December 30, 1994, Prosser was "not authorized to participate in operating management and major policy making functions of the bank otherwise than in the capacity of a director of the bank." (Def.'s Mem. in Supp. of Summ. Judg. at Exhibit A). VICB Board minutes which reflect the attendance of board members Jeffrey Prosser, Dawn Prosser, John Raynor, J'Ada Finch–Sheen, and Michael Dow establish that Prosser was not controlling the decisions made by the bank but rather was a voting member of the Board. As to the operations of the Bank, clearly the bank had established policies and formal methods of operating, since regular board meetings were conducted to address serious concerns and the bank

maintained a healthy management staff responsible for carrying out daily operations. Plaintiff's termination was an act of the Board in which all members participated and ultimately was carried out by Plaintiff's direct supervisor, President and CEO Michael Dow. With respect to Prosser's individual role in the events leading to his termination, Plaintiff alleges only that "Jeffrey Prosser, a Board Member, Chairman of the Board and sole owner of the bank, specifically inquired as to what the total amount of the overdrafts were," and was involved in a lengthy telephone discussion concerning the overdrafts which "lasted approximately 1½ hours." (Pl.'s Compl. at ¶¶ 30, 32). Prosser's inquiry regarding the overdrafts can not establish by clear and convincing evidence that the corporation is a facade which warrants piercing the corporate veil.

■ As to Plaintiff's breach of contract and related tort claims, although Plaintiff alleges emotional distress, fraud and misrepresentation, Plaintiff cannot show that Prosser individually made any agreement between himself and Plaintiff separate from the Bank. The Court cannot find that a contractual obligation existed between Prosser and Matheson. Without a viable contract action, the remaining tort claims cannot endure. *See Strojmaterialintorg,* 815 F.Supp. at 105 ("to sustain a tort action separate from the breach of contract claim, the tortuous conduct must have breached a legal duty existing independently of the contractual relations between the parties"). Plaintiff's complaint states that "Defendant Jeffrey Prosser knew at the time the representations were made that they were misrepresentations." However, a claim which is predicated on a breach of contractual arrangement "cannot be converted into a fraud claim simply by allegations that a defendant never intended to adhere to its obligations under the

agreement." *Id.* The Court will therefore grant Defendant's motion for summary judgment as to these remaining counts. Because punitive damages are ancillary to these claims, the Court will also grant Defendant's motion for summary judgment as to punitive damages.

### D. Wrongful Discharge (Count IV)

■ Defendant seeks summary judgment as to Plaintiff's Wrongful Discharge claim, arguing that he cannot be held liable under the Wrongful Discharge Act because he is not an "employer" as defined by the Act. Section 62 of the Wrongful Discharge Act defines an "employer" as "any person acting in the interest of an employer directly or indirectly that has employed five (5) or more employees." See 24 V.I.C. § 62. Based on the plain language of the statute and on this Court's discussion earlier in this opinion concerning the individual liability of Prosser as a shareholder and Board member, the Court can find no justification for imposing individual liability upon Prosser for Plaintiff's termination. The facts reveal that beyond Prosser's involvement in a telephone conference between Plaintiff and his direct supervisor, Michael Dow, discussing the overdrafts revealed by the FDIC audit, and his participation in Board meetings and decisions, Prosser's role was confined to that of acting Board member. Plaintiff does not allege any facts aimed specifically at Prosser for his part in the termination. Prosser's liability under the Act would rely on a finding under agency principles that he was an "employer" based on the statute's "acting in the interest of an employer" language, and that Prosser did in fact "act" in such a way as to implicate the Act's protection for wrongful discharge. The Court has already established in this opinion that Prosser as shareholder and Board member is not individually liable as an "employer." It is also clear that Pros-

ser's actions were appropriate under his authority as board member and that he did not personally terminate Plaintiff. Thus, any wrongful discharge alleged by Plaintiff cannot succeed against Prosser. The Court will Grant Defendant's motion.

## CONCLUSION

For the reasons stated above, the Court will grant Defendants Prosser and VICB's motion as to Count III, and the same is dismissed. Defendant VICB's motion to dismiss Count IV is denied. Defendant Prosser's motion for summary judgment as to all remaining counts will be granted. The Court also dismisses defendants' motion for sanctions as moot.

## ORDER REGARDING MOTIONS FOR DISMISSAL AND SUMMARY JUDGMENT

**THIS MATTER** having come before the Court on Defendant Jeffrey Prosser's motion for summary judgment, and Defendants' Jeffrey Prosser and VICB's motions for partial dismissal;

The Court having reviewed the record and the submissions of the parties and for the reasons stated in the Court's opinion of this date;

**IT IS** on this 19th day of December, 2003, **HEREBY**

**ORDERED** that Defendants' Jeffrey Prosser and VICB's motion for partial dismissal as to Plaintiff's ADA claim is **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant VICB's motion for partial dismiss-

al as to Plaintiff's Wrongful Discharge Claim is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Jeffrey Prosser's motion for summary judgment as to all remaining counts is **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendants' motion for sanctions is dismissed as moot.[3]

---

**3.** The disposal of the above motions leaves remaining Plaintiff's cause of action against Defendant VICB for wrongful discharge. That action remains to be tried, and the Court will set a trial date as yet to be determined. The Court also notes that Plaintiff's motion for reconsideration of this Court's affirmance of Judge Resnick's denial of an extension of time to submit opposition to Defendants' motion for summary judgment on all counts still remains to be decided and the Court will address that motion in a subsequent opinion.