**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**AHMAD M. ALKHATIB, (D.O.B.: 02-22-58), Defendant.**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**WORLD FRESH MARKET, LLC, d/b/a PUEBLO SUPERMARKET,**
**Defendant**

Criminal Nos. ST-09-CR-462; ST-09-CR-495

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

April 7, 2010

132

CLAUDE E. WALKER, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, U.S. Virgin Islands, *Counsel for the People*.

PAMELA L. COLON, ESQ., Christiansted, St. Croix, U.S. Virgin Islands, *Counsel for Ahmad M. Alkhatib*.

TRESTON E. MOORE, ESQ., Moore Dodson & Russell, P.C., St. Thomas, U.S. Virgin Islands, *Counsel for Ahmad M. Alkhatib*.

MICHAEL L. SHEESLEY, ESQ., Law Offices of Kevin F. D'Amour, P.C., St. Thomas, U.S. Virgin Islands, *Counsel for World Fresh Market*.

CARROLL, *Judge*

## MEMORANDUM OPINION

(April 7, 2010)

**THIS MATTER** came on for a hearing on November 5, 2009, and November 17, 2009, on the People's motion made pursuant to V.I. CODE ANN. tit. 14, § 606(f) (1996) ("§ 606(f)"). The People are represented by Assistant Attorney General Claude E. Walker, Esq. Defendant World Fresh Market, LLC, d/b/a Pueblo Supermarket, is represented by Michael L. Sheesley, Esq., of the Law Offices of Kevin F. D'Amour, P.C. Defendant Ahmad M. Alkhatib is represented by Treston Moore, Esq., of Moore Dodson & Russell, P.C., and Pamela L. Colon, Esq. A hearing pursuant to § 606(f) was previously held in Superior Court Case No. ST-09-CR-462 alone on October 23, 2009. This Memorandum Opinion and Order will address the issues raised at the hearings with respect to both Defendants.

133

## STATEMENT OF FACTS

On September 15, 2009, the People filed an Information alleging that Defendant Ahmad M. Alkhatib ("Alkhatib") committed various offenses[1] between December 2007 and September 2009 by using power provided by the Virgin Islands Water and Power Authority ("WAPA") without fully compensating WAPA for the same.[2] Thereafter, on September 23, 2009, the People filed the Government's Motion for a Hearing Under 14 V.I.C. § 606(f) To Have Certain Accounts of the Defendant Restrained, "mov[ing] this Honorable Court for a hearing to restrain certain accounts of the Defendant that are subject to criminal forfeiture." (Pl.'s Mot. for § 606(f) Hr'g, Sept. 23, 2009.) This § 606(f) hearing was held on October 23, 2009 ("October 23 hearing").

In the meantime, on September 24, 2009, the People filed an Information alleging the same crimes against Defendant World Fresh Market, LLC, d/b/a Pueblo Supermarket ("World Fresh") that had been charged against Alkhatib.[3] On October 26, 2009, the People moved to consolidate the two cases for trial. The People contended that Alkhatib is the sole owner of World Fresh, a domestic limited liability company that has four (4) supermarket locations within the territory: Estate Thomas and Subbase in St. Thomas and Villa La Reine Shopping Center and Golden Rock Shopping Center in St. Croix. (Pl.'s Mem. of Law on Std. for § 606(f) Hr'g 1.) Furthermore, the charges in each Information stemmed

---

[1] The Information against Alkhatib alleges the following: Count One, violation of the Criminally Influenced and Corrupt Organization Act, specifically, V.I. CODE ANN. tit. 14, §§ 604(e)(16) and 605(a) (1996); Count Two, Obtaining Money by False Pretenses in violation of V.I. CODE ANN. tit. 14, § 834(2) (1996); Count Three, Grand Larceny in violation of V.I. CODE ANN. tit. 14, § 1083(1); Count Four, Tampering and Illegal Use of Utility or Cable Television Equipment in violation of V.I. CODE ANN. tit. 14, § 1263(b)(2); and Count Five, Reckless Endangerment in violation of V.I. CODE ANN. tit. 14, § 625(a).

[2] *People of the Virgin Islands v. Ahmad M. Alkhatib*, Superior Court Case No. ST-09-CR-462.

[3] Namely, the Information filed in *People of the Virgin Islands v. World Fresh Market, LLC, d/b/a Pueblo Supermarket*, Superior Court Case No. ST-09-CR-495, against World Fresh alleges the following: Count One, violation of the Criminally Influenced and Corrupt Organization Act, specifically, V.I. CODE ANN. tit. 14, §§ 604(e)(16) and 605(a) (1996); Count Two, Obtaining Money by False Pretenses in violation of V.I. CODE ANN. tit. 14, § 834(2) (1996); Count Three, Grand Larceny in violation of V.I. CODE ANN. tit. 14, § 1083(1); Count Four, Tampering and Illegal Use of Utility or Cable Television Equipment in violation of V.I. CODE ANN. tit. 14, § 1263(b)(2); and Count Five, Reckless Endangerment in violation of V.I. CODE ANN. tit. 14, § 625(a).

from the same set of facts. The Court consolidated the two cases by Order dated October 27, 2009.

On October 28, 2009, the People filed the Government's Motion for a Hearing Under 14 :V.I.C. § 606(f) To Have Certain Accounts of the Defendant Restrained in the case against World Fresh, which tracked the language of the motion that the People had previously filed against Alkhatib. It was not until the § 606(f) hearing held on November 5, 2009 ("November 5 hearing"), that the People orally moved for the appointment of a receiver pursuant to § 606(f)(3). Prior to that, the People had made clear that the relief they sought was the pre-trial, pre-conviction restraint of the Defendants' assets. Indeed, the Court had previously ordered the parties to submit briefs regarding the issue of the appropriate standard for a § 606(f) hearing to restrain assets and issued an Order[4] thereon clarifying that the preponderance of the evidence standard set forth in subsection (f)(3) applied to subsections (f)(1) and (2) as well. This clarification would have been unnecessary if the People had indicated an intent to pursue the appointment of a receiver under § 606(f)(3) *ab initio*.

The People reiterated at the § 606(f) hearing held on November 17, 2009 ("November 17 hearing"), that they were seeking the appointment of a receiver over the accounts of World Fresh rather than the restraint of assets in an account. Furthermore, the People indicated that they were not seeking, and would not be satisfied with, the Defendants' tendering of a performance bond for the amount in dispute.

## DISCUSSION

### Defendant Ahmad M. Alkhatib

The Court declines to restrain or appoint a receiver over any assets of Alkhatib, as the People have not to date listed a single asset of Alkhatib that would be subject to forfeiture under the provisions of Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO"), V.I. CODE ANN. tit. 14, §§ 600-614 (1996). Section 606(f) requires that any

---

[4] The Court's determination as to the appropriate standard for the § 606(f) hearing, which cited the Virgin Islands Supreme Court decision in *In re Najawicz*, S. Ct. Civ. No. 2009-001, 52 V.I. 311, 2009 V.I. Supreme LEXIS 40 [WL] (V.I. Sep. 22, 2009), was put on the record orally by the Court at the start of hearing held pursuant to § 606(f) on November 17, 2009. It was reduced to writing in an Order dated November 23, 2009.

person who will be affected by any of the measures listed in its subsections be provided notice and an opportunity to participate in a hearing on the matter. The United States Supreme Court has long held that "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). It cannot be said that a defendant can meaningfully participate in a hearing about assets that may be subject to temporary or permanent seizure without knowledge of what those assets are. At no time did the People present evidence regarding any accounts in Alkhatib's name.

██ ██ Nor will the Court pierce the corporate veil in this matter. "Piercing the corporate veil is 'an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation.' " *Matheson v. V.I. Community Bank, Corp.*, 297 F. Supp. 2d 819, 833 (D.V.I. 2003) (quoting *Trustees of the Nat'l Elevator Industry v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003)). "Mere conclusory allegations that the shareholder is an 'alter-ego' of a corporation" are insufficient to pierce the corporate veil. *Matheson*, 297 F. Supp. 2d at 833 (quoting *Strojmaterialintorg v. Russian American Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y. 1993)). "Because a finding of derivative liability is akin to fraud, it must be shown by clear and convincing evidence." *Matheson*, 297 F. Supp. 2d at 833. *See also Trustees*, 332 F.3d at 192. As such, in determining whether or not to pierce the corporate veil, courts in the Third Circuit consider the following factors: (1) whether the corporation suffers from gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of debtor corporation; (5) siphoning of funds from the debtor corporation by the dominant stockholder; (6) nonfunctioning officers; (7) absence of corporate records; and (8) whether the corporation is merely a facade for the operation of the dominant stockholder. *Matheson*, 297 F. Supp. 2d at 833 (citing *Pearson v. Component Technology Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001)).

██ Although the People tried to paint the picture that World Fresh and Alkhatib were one and the same, they did not provide enough evidence to allow this Court to pierce the corporate veil. At the October 23 hearing,

which was held with respect to Alkhatib, the People presented numerous exhibits related to bank accounts in the name of World Fresh, noting that Alkhatib was the authorized signatory on each of these accounts. The People also presented the testimony of Agent Kenneth Schulterbrandt, Jr. ("Schulterbrandt"), a Special Agent with the Special Investigations Unit of the Department of Justice. Schulterbrandt testified that his investigation showed that World Fresh is a domestic limited liability company of which Alkhatib is the sole member. However, there was no evidence that Alkhatib ever disregarded the independent status of World Fresh and treated the company as his alter ego. The mere allegation that Alkhatib is the sole owner or director of World Fresh is not enough to pierce the corporate veil and require Alkhatib to pay for the expenses of World Fresh.

For the foregoing reasons, the Court will not restrain or appoint a receiver over the assets of Alkhatib in this matter.

### Defendant World Fresh Market, LLC, d/b/a Pueblo Supermarket

The People seek the appointment of a receiver of the accounts of World Fresh pursuant to a provision of CICO, which provides that

> [u]pon the filing of an information, the trial court, after a hearing with respect to which any person who may be affected, and who is known to the prosecuting authority filing the information, has been given reasonable notice and opportunity to participate, but at which the usual rules of evidence shall not apply, may, based on the information . . . take any other action including, but not limited to, the appointment of a receiver, that the Attorney General or United States Attorney shows by a preponderance of the evidence is necessary to preserve the reachability of property alleged to be subject to criminal forfeiture.

V.I. CODE ANN. tit. 14, § 606(f)(3).

 While the case law dealing with the appointment of receivers concerns mortgage foreclosures, there are principles to be gleaned from this body of law that will assist the Court in the analysis of the instant case. Courts have long held that "[t]he appointment of a receiver is a matter within the sound discretion of the court and is justified upon a showing that subject corporate property is in grave and imminent danger of dissipation. Each case must be decided upon its own conditions and

137

circumstances." *Kings Wharf Island Enterprises, Inc. v. Rehlaender*, 34 V.I. 23, 29 (Terr. Ct. 1996) (citing *Zinke-Smith, Inc. v. Marlowe*, 323 F. Supp. 1151, 8 V.I. 240 (D.V.I. 1971)). The appointment of a receiver "like an injunction, [is] an extraordinary remedy, and ought never be made except in cases of necessity, and upon a clear and satisfactory showing that the emergency exists, in order to protect the rights of the plaintiff in the property involved." *Zinke-Smith*, 323 F. Supp. at 1151. Indeed, "the power of appointing receivers is one which the courts have said should be sparingly exercised, and with great caution and circumspection." *Id.* (citation omitted). Inherent in the holdings of these cases "is the recognition that 'the appointment of a receiver is an equitable remedy of rather drastic nature . . .' " *Nat'l Investors Pension Ins. Co. v. Bayside Resort, Inc.*, Civ. Nos. 83-162 and 83-354, 1984 U.S. Dist. LEXIS 24701, at *5 (D.V.I. Jul. 31, 1984) (quoting *Mintzer v. Arthur L. Wright Co.*, 263 F.2d 823 (3d Cir. 1959)).

■ Courts have considered the following factors relevant in determining whether the appointment of a receiver is necessary: (1) fraudulent conduct on the part of the defendant; (2) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (3) the inadequacy of the available legal remedies; (4) whether the plaintiff would be more harmed by the denial of the appointment than the opposing party would be by the granting of the appointment; (5) the likelihood of the plaintiff's success in the action; and (6) the possibility of irreparable injury to the plaintiff's interests in the property. *See Mintzer*, 263 F.2d 823; *see also Zinke-Smilh*, 323 F. Supp. 1151.

■ The People have not shown by a preponderance of the evidence that the appointment of a receiver is necessary in this case. Although the People presented evidence of funds being disbursed from the very accounts they sought to restrain or have a receiver appointed over, the evidence also showed that these accounts were used to pay World Fresh's lease, payroll, taxes, merchants and other such expenses related to the normal operation of the four (4) Pueblo stores in the territory. Defendants argued that the Pueblo stores, which are operated by World Fresh, are a staple in this community, providing not only groceries, but also job opportunities for Virgin Islanders. Therefore, it would not be in the public interest to interfere with the operation of World Fresh's business by appointing a receiver. Furthermore, the People offered little evidence

indicating that the funds in the accounts were in grave or imminent danger of dissipation. The accounts in question contained over Thirty-Six Million Dollars ($36,000,000.00); however, the amount allegedly owed to WAPA by the Defendants is approximately One Million Three Hundred Thousand Dollars ($1,300,000.00). Because of the value of these accounts, there is little danger of dissipation of these assets pending trial.

Therefore, in light of the aforementioned reasons, the Court will deny the People's motion to restrain or appoint a receiver over the assets of World Fresh in this matter. A separate Order will follow.